UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REHAB MANAGEMENT SOLUTIONS, LLC,

    Plaintiff,

v.

                                      Case Number 11-11990-BC
                                      Honorable Thomas L. Ludington

DIVERSA CARE THERAPEUTICS, INC.,

    Defendant.

_____ /

**<u>OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS AND ORDERING PLAINTIFF TO SHOW CAUSE</u>**

This case involves a dispute between the co-owners of a Michigan limited liability company; the question presented is whether res judicata or collateral estoppel bars one owner from compelling the other to submit the dispute over distribution of the company's profits to arbitration. Plaintiff Rehab Management Solutions, LLC, is a Wisconsin limited liability company. Defendant Diversa Care Therapeutics, Inc., is a Michigan corporation. In 2001, Plaintiff and Defendant agreed to form a limited liability company, Saginaw Physical Therapy and Rehab Specialty, LLC ("Company"), a Michigan limited liability company. The Company's operating agreement provided that Plaintiff would receive forty percent of the profits, Defendant would receive sixty percent. Compl. Ex. 1 § 5.1, ECF No. 1-2. Arbitration, the operating agreement also provided, would be used to settle all disputes arising out of the agreement. *Id*. § 13.7.

On October 31, 2007, Plaintiff brought suit against Defendant in the Saginaw County Circuit Court, alleging nineteen specific breaches of the operating agreement. *See* Def.'s Mot. Dismiss Ex. A ¶ 28, ECF No. 6-2 (state court complaint); Pl.'s Opp'n Mot. Dismiss Ex. A ¶ 28, ECF No. 8-2 (same). The breaches began, Plaintiff's complaint alleged, in the first week of October 2007 (about three weeks before the state court complaint was filed). *See id.* ¶ 27. All of the breaches concerned the management and administration of the Company. Enumerated in paragraph twenty-eight of the state court complaint, the specific breaches included:

a. Refusal to cooperate in structured meeting model for growth and development, finance and product development;

b. Failure to include Board Members in decision to close the Hampton office;

c. Failure to replace any licensed physical therapist or occupational therapist;

d. Failure to work on any growth model for Saginaw PTRS;

e. Failure to allow access to local banking accounts;

f. Failure to submit information for employee payroll;

g. Failure to adhere to Purchase Order system;

h. Failure to send invoices/bills for Accounts Payable;

i. Failure to send patient registration information;

j. Failure to send patient verification information;

k. Failure to send in Managed Care Audit Form;

l. Failure to report status on Medicare Compliance resulting in $4,922 in unbilled claims;

    m.    Failure to update authorization department on status of managed visits resulting in $9,424 in unbilled claims;

    n.    Failure to send charge tickets for billing;

    o.    Failure to send in medical records for PBA/billing;

    p.    Failure to send in Front Desk money logs;

    q.    Failure to send any correspondence from third party payers to backroom, i.e., explanation of benefits or medical record requests, third party payments, undeliverable patient statements;

    r.    Failure to respond to emails from practice management team; [and]

    s.    Unilateral decision to remove [Plaintiff's] employee, Connie Ziccarelli, as contact for Medicare and other third party payors.

*Id*. ¶ 28.  Plaintiff sought a temporary restraining order, preliminary injunction, and the appointment of a receiver to "protect and preserve the assets of [the Company] until the issues can be resolved by arbitration."  *Id*. ¶ 38.  The same day Plaintiff filed its complaint — October 31, 2007 — Plaintiff also filed a demand for arbitration with the American Arbitration Association.  Def.'s Mot. Dismiss Ex. B, at 1, ECF No. 6-3 ("Def.'s Mot.").

Defendant counterclaimed in state court and the litigation continued in that court; Plaintiff did not pursue its demand for arbitration.  But while Plaintiff repeatedly propounded discovery on Defendant, it did not respond to Defendant's discovery requests.  As a discovery sanction, on March 19, 2010, the court dismissed Plaintiff's complaint pursuant to Rule § 2.504(B)(1) of the Michigan Compiled Laws.  Def.'s Mot. Ex. C, at 2, ECF No. 6-3.

In February 2011, the court again sanctioned Plaintiff, entering default judgment on Defendant's counterclaim and setting a hearing for damages. Plaintiff then moved to dismiss the case in favor of arbitration. The court denied the motion. Noting that Plaintiff had "repeatedly sought discovery" and "filed motions for summary disposition," the court concluded that Plaintiff had "waived [its] right to rely upon arbitration as a defense to theis [sic] suit." Def's Mot. Ex. E, at 1, 2; Pl.'s Mot. Opp'n Dismiss Ex. D, at 1, 2, ECF No. 8-5 ("Pl.'s Mot."). Importantly, neither of the parties has informed this Court of the status of the state court action — it may be pending, it may have been consensually resolved, it may, indeed, have been finally adjudicated.

On May 5, 2011, Plaintiff brought suit in this Court alleging that subject matter jurisdiction is founded on diversity of citizenship and that the amount in controversy is in excess of $75,000. Compl. ¶¶ 1–4. Substantively, Plaintiff alleges yet another breach of contract — that Defendant "has not tendered profit to Plaintiff . . . since October, 2007 to present." *Id*. ¶ 8. As a remedy, Plaintiff seeks an order directing Defendant to arbitrate the dispute pursuant to § 13 of the operating agreement.

Now before the Court is Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 6. Defendant argues that the complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff's claim is barred by res judicata and collateral estoppel and the Court therefore lacks subject matter jurisdiction. Moreover, Defendant argues, the complaint should be dismissed pursuant to Rule 12(b)(6) because the complaint cannot state a claim which was already raised (or should have been raised), and lost, in a prior proceeding. In sum, Defendant argues, the complaint should be

dismissed because the "request for arbitration has already been adjudicated fully and finally by the Saginaw County Circuit Court." Def.'s Br. Supp. Mot. Dismiss 3, ECF No. 6-1 ("Def.'s Br."). Opposing the motion, Plaintiff contends "the request for arbitration concerns entirely new facts over an entirely different time period as was involved in the Saginaw Circuit Court case." Pl.'s Br. Opp'n Mot. Dismiss 3, ECF No. 8-1 ("Pl.'s Br."). "That case," Plaintiff argues, "deals only with pre-November 2007 facts." *Id*.

For the reasons discussed below, Defendant's motion shall be denied. Additionally, Plaintiff shall be ordered to identify the factual basis for its claim that the amount in controversy is in excess of $75,000. "[F]ederal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction . . . ." *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998). The complaint alleges that the amount in controversy meets the jurisdictional requirements of 28 U.S.C. § 1332. Neither the complaint nor the papers filed since, however, provide a factual predicate for the Court to conclude that Plaintiff's lost profits claim will exceed $75,000. Plaintiff shall be ordered to supplement its pleadings accordingly.

## I.

The defenses of res judicata and collateral estoppel may be raised in a motion to dismiss pursuant to either Rule 12(b)(1) or 12(b)(6). *See, e.g.*, *In re Graves*, 282 Fed. App'x 432, 432–33 (6th Cir. 2008) (affirming district court's decision dismissing complaint pursuant to Rule 12(b)(1) because res judicata and collateral estoppel barred the claims); *Daubenmire v. City of Columbus*, 507 F.3d 383, 389–90 (6th Cir. 2007) (affirming the district court's decision dismissing the complaint pursuant to Rule 12(b)(6) because res judicata barred the claims).

Rule 12(b)(1) motions "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Facial attacks challenge the sufficiency of the pleading itself; in evaluating facial attacks, the court must accept the factual allegations as true and construe them in the light most favorable to the nonmoving party. *Id*. Factual attacks, in contrast, challenge "the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (citation omitted) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Rule 12(b)(6) motions, like facial attacks pursuant to Rule 12(b)(1), require the court to "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc*., 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation marks omitted). If the allegations in the complaint show that an affirmative defense bars the case, the motion to dismiss for failure to state a claim should be granted. *Jones v. Bock,* 549 U.S. 199, 215 (2007) (collecting cases).

In this case, Defendant attaches seven exhibits to its motion to dismiss. All but two of these exhibits are matters of public record — pleadings and orders in the state court action. *See* Def.'s Exs. A, C–F. The remaining two exhibits are Plaintiff's 2007 demand for arbitration and a transcript from a motion hearing in state court, which may properly be considered pursuant to the Rule 12(b)(1) factual challenge. *See id*. Exs. B, G. Plaintiff, moreover, has not objected to the Court considering any of these seven exhibits on Defendant's motion to dismiss. Therefore, each of the exhibits may be considered as appropriate.

## II.

"Res judicata," broadly defined, "refers to the various ways in which a judgment in one action will have a binding effect in the other." Fleming James et al., *Civil Procedure* 675 (5th ed. 2001). "The doctrine of *res judicata* includes two separate concepts — issue preclusion and claim preclusion." *Dubuc v. Green Oak Twp*., 312 F.3d 736, 745 n.4 (6th Cir. 2002). "Issue preclusion," traditionally referred to as "collateral estoppel," provides that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). "Claim preclusion," traditionally also referred to as "res judicata" (or "true res judicata") "forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 891–93 (2008) (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

To determine the preclusive effect of an earlier suit, federal courts look to the law of the court rendering the prior judgment. *See, e.g.*, *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank,* 333 Fed. App'x. 994, 998 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999) ("[W]e must give the same preclusive effect, under the doctrines of res judicata and collateral estoppel, to state court judgments that those judgments would receive in courts of the rendering state."). When the prior judgment was rendered by a state court, this Court will "look to the state's law to assess the preclusive effect it would attach to that judgment." *Id*.

### A.

Under Michigan law, res judicata (claim preclusion) "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222 (Mich. 2001)).

In this case, the parties agree that the state court action was decided on the merits and involved the same parties. *Compare* Def.'s Br. 8, *with* Pl.'s Br. 3. The dispute is over the final element: whether the claim at issue in this case — Plaintiff's claim of entitlement to arbitrate the proper distribution of Company profits from October 2007 to present — "was, or could have been, resolved in the first [case]." *Adair*, 680 N.W.2d at 396.

To determine if the matter could have been resolved in the first case, Michigan applies two alternative tests: the "same evidence" test and the "same transaction" test. *Begin v. Mich. Bell Tel. Co.*, 773 N.W.2d 271, 283 (Mich. Ct. App. 2009) (citing *Adair*, 680 N.W.2d at 386).

The "same evidence" test looks to "whether the same facts or evidence are essential to the maintenance of the two actions." *Id.* (quoting *Jones v. State Farm Mut. Auto. Ins. Co.*, 509 N.W.2d 829 (Mich. Ct. App. 1993)). The broader "same transaction" test "provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755, 759 (Mich. 2007) (quoting *Adair*, 680 N.W.2d at 386). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit." *Adair*, 680 N.W.2d at 398 (alterations and emphasis omitted) (quoting 46 Am. Jur. 2d *Judgments* § 533); *see generally Restatement (Second) of Judgments* § 24 cmt. b (noting that "transaction" "connotes a natural grouping or common nucleus of operative facts" and that the court should consider "how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first").

In this case, the nucleus of operative facts at issue in the state court case concerned the management and administration of the Company. They are alleged to have occurred from about October 4 through October 31, 2007. They included the following specific alleged acts and omissions of Defendant:

    a.      Refusal to cooperate in structured meeting model for growth and development, finance and product development;

    b.      Failure to include Board Members in decision to close the Hampton office;

c.   Failure to replace any licensed physical therapist or occupational therapist;

d.   Failure to work on any growth model for Saginaw PTRS;

e.   Failure to allow access to local banking accounts;

f.   Failure to submit information for employee payroll;

g.   Failure to adhere to Purchase Order system;

h.   Failure to send invoices/bills for Accounts Payable;

i.   Failure to send patient registration information;

j.   Failure to send patient verification information;

k.   Failure to send in Managed Care Audit Form;

l.   Failure to report status on Medicare Compliance resulting in $4,922 in unbilled claims;

m.   Failure to update authorization department on status of managed visits resulting in $9,424 in unbilled claims;

n.   Failure to send charge tickets for billing;

o.   Failure to send in medical records for PBA/billing;

p.   Failure to send in Front Desk money logs;

q.   Failure to send any correspondence from third party payers to backroom, i.e., explanation of benefits or medical record requests, third party payments, undeliverable patient statements;

r.   Failure to respond to emails from practice management team; [and]

      s.      Unilateral decision to remove [Plaintiff's] employee, Connie Ziccarelli, as contact for Medicare and other third party payors.

Def.'s Mot. Ex. A ¶ 28; Pl.'s Opp'n Ex. A ¶ 28. In sum, in the state court action Plaintiff was complaining that it was being frozen out of the Company's management and administration during October 2007.

In contrast, in this case Plaintiff is not complaining about being frozen out. Plaintiff is complaining that it has not received its share of the Company's profits from October 2007 to present. Compl. ¶ 8. Thus, the two suits do not involve the same evidence or operative facts. The operative facts at issue in the prior suit involved Defendant's management of the day-to-day operations of the Company in October 2007. The operative facts at issue in this suit involve the distribution of the Company's profits in the four years since October 2007.

Defendant, arguing against this conclusion, asserts that Plaintiff "had accrued whatever damages it could claim an [sic] at the time it filed for it in October of 2007." Def.'s Br. 8. Defendant elaborates: "the plaintiff ceased to have any right as a member of the LLC at the time of the filing of the arbitration. Hence, any rights it would have to arbitrate were fully and finally accrued at that date." *Id*. (emphasis omitted). Defendant does not, however, elaborate on why Plaintiff was divested of its membership interests in October 2007. Nor does Defendant specify what, if anything, divested Plaintiff of its interests in the Company.

Moreover, an independent review of the exhibits attached to Defendant's motion to dismiss do not show Plaintiff's interests in the Company were terminated in October 2007. Indeed, although the operating agreement has provisions regarding the voluntary and involuntary transfer of a member's interest in the Company — specifically, Article 8 — nothing suggests that

these provisions were triggered. Likewise, in the transcript from a motion hearing in state court (dated February 7, 2011), Defendant is recorded as arguing: "They disassociated from the LLC under, I believe, it's Article 5 [of the operating agreement] — no, it's a little further down, 15 or 16." Def.'s Mot. Ex. G, at 15:24–25. None of the Articles Defendant references, however, deal with dissociation. Article 5, titled "Allocation of Profits and Losses," sets forth the profit-sharing arrangement. Pl.'s Opp'n Ex. E, at 9. Article 15, titled "Covenant Not To Compete," sets forth the non-competition arrangement. *Id*. at 20. And Article 16, titled "Miscellaneous," contains four sections: subsection 16.1, "Successors and Assigns"; subsection 16.2, "Governing Law"; subsection 16.3 "Enforcement Costs"; and subsection 16.4, "Severability." *Id*. at 20–21. None deal with dissociation, which is instead provided for in Article 8. *See id*. at 13–17. And nothing in Article 8, states that a membership interest is terminated by commencing litigation.

Similarly, the state court order which followed the hearing on February 7, 2011, does not state that Plaintiff's membership interests were terminated in the Company — it does not even reference the issue. Def's Mot. Ex. E, at 1–2. Rather, it concludes that because Plaintiff had "repeatedly sought discovery" and "filed motions for summary disposition," Plaintiff had "waived [its] right to rely upon arbitration as a defense to theis [sic] suit." *Id*.

In sum, the papers show only that Plaintiff defaulted on its complaint regarding the Company's management during the month of October 2007 and waived its right to arbitrate that dispute. That suit, however, did not involve the same evidence or operative facts as this suit. Plaintiff's claim in this case is not precluded by the prior suit.

Reinforcing this conclusion is the jurisprudence of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., which applies to arbitration agreements involving interstate commerce.[1] *Alticor, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 411 F.3d 669, 672 (6th Cir. 2005) (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Perry v. Thomas*, 482 U.S. 483, 489 (1987) (citing 9 U.S.C. § 2 and noting the Act "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce"). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Alticor*, 411 F.3d at 672–73 (quoting *Moses H. Cone Hosp.*, 460 U.S. at 24–25). Plaintiff has not waived its right to arbitrate its claim for its share of the Company's profits. Res judicata does not bar Plaintiff's claim.

**B.**

Under Michigan law, collateral estoppel precludes relitigation of an issue when "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes v. Titus*, 751 N.W.2d 493, 500 (Mich. 2008). "This doctrine is strictly applied in that 'the issues in both cases must be identical, and not merely similar.' The previous litigation must have presented a 'full and fair' opportunity to litigate the issue presented in the subsequent case." *Keywell & Rosenfeld v. Bithell*, 657 N.W.2d 759, 782 (Mich. Ct. App. 2002) (alterations and footnote omitted) (quoting *Eaton Co. Bd. of Co. Rd. Comm'rs v. Schultz*, 521 N.W.2d 847, 850 (Mich. Ct. App. 1994) (per curiam)).

---

[1] As noted above, Plaintiff is a Wisconsin limited liability company. Defendant is a Michigan corporation.

In *Schultz*, for example, after a horse was injured by stepping into a hole, the owner brought suit against a local government entity. 521 N.W.2d at 849. The first suit was dismissed with prejudice by stipulation of the parties. *Id*. Notwithstanding the stipulated agreement dismissing the case with prejudice, however, the owner brought suit again. *Id*. The second suit was dismissed on governmental immunity grounds. *Id*. The local government entity then brought suit against the owner for breach of contract (i.e., breach of the stipulated agreement). *Id*. The trial court granted the horse owner's motion to dismiss on res judicata and collateral estoppel grounds, but the Michigan Court of Appeals reversed, explaining:

> Collateral estoppel does not bar the road commissioners' breach of contract suit because any question of the effect of the stipulation upon which this suit is based was not essential to the governmental immunity-based judgment; the judgment of dismissal on grounds of governmental immunity did not depend on any findings concerning the effect of the stipulation.

*Id*. at 851.

In this case, Defendant argues that Plaintiff's "request to have the matter removed to an arbitration proceeding . . . was squarely dealt with by [the state court] and resulted in an Order fully and finally adjudicating that issue." Def.'s Br. 7. Defendant's argument is unpersuasive. The state court did not "squarely deal" with the general issue of whether arbitration was available under the operating agreement. Rather, the court ruled that Plaintiff had waived its right to arbitrate its claim regarding the management and administration of the Company by its course of conduct during the state court litigation. The court held that Plaintiff had "waived [its] right to rely upon arbitration as a defense to theis [sic] suit." Def.'s Mot. Ex. E, at 2; Pl.'s Opp'n Ex. D, at 2. Because the terms of operating agreement's arbitration provision, upon which this

suit is based, were not essential to the state court's judgment, collateral estoppel does not bar this suit.

### III.

Accordingly, it is **ORDERED** that Defendant's motion to dismiss is **DENIED**.

It is further **ORDERED** that the hearing scheduled for September 19, 2011, at 2:00 p.m. is **CANCELED** because the parties papers provide the necessary factual and legal information to decide the motion.  *See* E.D. Mich. L.R. 7.1(f)(2).

It is further **ORDERED** that Plaintiff is **DIRECTED** to identify the factual basis on which it claims the amount in controversy exceeds $75,000 in writing on or before **September 30, 2011**.

/s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 14, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 14, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---